rnal Revenue. Good morning, your honors. I'm Jack Canry of Warshaw Burstein in New York, attorney for the appellants here. This is a little different type of case than what you've been listening to today. No criminality. This is a tax court case with complex issues. The uniqueness of this case, which involves a seeking of a reversal of denial of a summary judgment motion to have withdrawn a collection activity, a notice of a filing of a federal tax lien by the tax court. The uniqueness, I think, can best be described by a number of errors. Of commission and omission by the IRS. Amazingly, a number of them conceded, but belatedly. But did any of them make any difference? In the end, you have argued from the beginning that they did not assess your taxes in 2011. And they say, according to the rules, that if you declared them originally that way, that is all that's needed. Then, of course, you came in with an amended return, which they didn't buy. They added extra things which they shouldn't have and debated it. But does that make any difference, ultimately, to the underlying question, which is, did you, in effect, self-assess? In the year 2011, which is probably the most critical one here, we did self-assess. True. But we did so before this wonderful superstorm Sandy hit, which caused six figures in damage to our residents, most of which was not paid for by flood insurance, never is. And so we followed the rules. There is a guide that the IRS publishes that's in the papers, in the appendix at 161 and 162, which talks about, in the case of a federally declared disaster, which this was, this wasn't just an ordinary disaster, that you can file an amended return to claim the additional damages. And does the filing of an amended return that is not accepted It was accepted. Well, they accepted it, but they didn't grant it. Does that undercut the original self-assessment? What cases do you have, what support do you have for a statement that that takes away the original assessment?  If you look at the instructions for the 1040X, which is the amended return, and that's on page 163 of the appendix, and you look at the structure of the actual form itself, as we all do when we file 1040s, it clearly indicates a composite, the aggregate. And it says, it says specifically in the instructions that use them as if you were using a new information to complete your original return. So the amended return took into account the self-assessment as amended by this casualty loss. The force of your argument is the very fact that you have filed an amended return takes away any assessment you originally made. It doesn't totally take it away. It amends it. It modifies it. So that you are not assessing. Pardon me? So that you are not self-assessing. Well, the self-assessing is not the end all if you can modify it by an amended return. Otherwise, an amended return is meaningless. And the disaster guide that the IRS puts out, the instructions it puts out, and the form itself, I think it's reasonable for taxpayers to be able to follow that. The excess amount was abated, though, correct? Pardon me? The excess amount was abated. No, that's a different issue, Judge. What the IRS did here, when the small business and what's it called, small business and self, what? Self-employed. Self-employed. Decided to audit, which took a year and a half. They audited just the loss under the amended return, okay? And they found, without giving details, that they were going to disallow the casualty loss. They said the only way I could pursue this further, I could appeal it, would be if I gave them an extension of time to assess on that amendment,  Well, that's not the rules. When that happens, they are required to give a notice of deficiency, okay? Coming to your point, Judge Gassman. They didn't give a notice of deficiency. The three-year statute of limitations for assessment on the amended return expired. What they did do was they filed a, what they called a notice of change of tax. They called it an assessment, but it wasn't an assessment. Subsequently, probably a year later, the IRS counsel that I was dealing with at the time, he agreed it wasn't an assessment, it was wrong, it was erroneous, and he abated it. He abated that, okay? How are your substantial rights affected? Our substantial rights are affected because the amended return has been ignored. What you said about the amended return doing that may, and you said it was reasonable, it may well be reasonable, but when you're dealing with a tax code, most of what happens is not reasonable. It's what the rules are, and my question is, can you cite rules? The IRS is saying that the rules are that the filing of the amended return does not make that difference, and I would agree with you that it's reasonable that it should, but the question is, does it do it? Judge, if I may, there are statutes, there are regulations, there are also many documents, instructions, forms promulgated by the IRS that I submit that taxpayers have a right to rely upon, and their own disaster guide that I cited says that. Now, if that's meaningless, then you could never have an amended return that meant anything, and, you know, they take that position, and it's unfortunate, I think, because the very people that wrote the regulations, not the individuals, but the IRS itself, are the ones that promulgate these forms and instructions. Are you to ignore them? Are you to say they're meaningless? Are you looking for a notice of deficiency? What are you looking for? No, no, what I'm looking for, Your Honor, is a withdrawal of a Federal tax lien that was filed, which is a collection activity. Ultimately, what you're looking for. Yes, because I say it was improper as to 2011 and premature as to 2012 to 2014. What more immediately, that's the ultimate result, what more immediately are you saying that the IRS failed to do that you're looking for to get to that end result? To get to that end result, Judge, you've got to look at the various errors that they committed, and it's incredible. If you want to hear about them, I'll tell you about them. You've already outlined them in your brief. Yes, yes. They're in the brief, and they're discussed in detail. I'm wondering, your concern, your real problem is with existing rules and regulations, and rather than ask a court, which is constrained by those rules and regulations, to act in ways that we perhaps cannot do, isn't your real recourse with going to your legislator trying to get a change in legislation or through the administrative process rather than asking for a court to do this? Let me try to answer it this way, Judge. The IRS, when it transmits various documents to taxpayers, almost universally includes what's called the Taxpayer Bill of Rights. All right? And that's at the — what page is that? It's in the page, the record. In this instance, the IRS had a Taxpayer Advocate Office, and I forget her name, but the chief of that office pushed to have that codified, legislatively codified, that Taxpayer Bill of Rights. In this case, I cited it because the IRS has always trumpeted that this shows how fair they are, even before it was codified, and my adversary said, it doesn't matter because it was codified after the events here that they say are critical, and what I say to that is, does that mean, and I think a court can deal with this, does that mean that all these instances of them sending this publication to the taxpayers for their information and use is meaningless before it becomes codified legislatively? And I think, in fairness, and there is some case authority, which I've cited in my brief, that the IRS should be held to what it issues in instructions and forms, even if it's not in the regulations, because they send them to the taxpayers for the taxpayers to rely upon them, and they should be held to the same standard as they want to hold the taxpayers to. Thank you. Thank you. Thank you. Good morning, and may it please the Court, my name is Nora Bringer, and I represent the Commissioner in this appeal. The taxpayers here failed to pay the tax liabilities that they reported were due on their originally filed tax returns for 2011 through 2014, and due to that failure, the IRS filed the Notice of Federal Tax Lien, that's the focus of the proceeding here. I'd like to start, if I may, with just a few words about the scope of this litigation. This is a review of a particular administrative process of the Cannery's Collection Due Process Proceeding, or CDP proceeding. Once the Cannery's appealed the determination of the IRS to the tax court, under the Treasury regulations that govern those proceedings, they could pursue only issues that they properly raised in the CDP proceeding. They raised that they did not self-assess. That's what basically they argued, that the government did not place a lead, did not assess this, and the government answered, because you filed a declaration in 2011, and that's enough under our regulations. What they're arguing now is that where you file an amended tax return, that removes that original filing, and does not make that a self-assessment. Now, they say that's reasonable. My question is, are there government regulations which say that makes no difference? Your Honor, I don't have a regulation at my fingertips, but I do have, as a number of cases that we cite in our brief, discussing the function of an amended return, and explaining that the filing of an amended return does not change an assessment that's already on the books. Here, there is an assessment for 2011 of approximately $83,000 in tax that the Cannery self-reported. And these are cases of the tax court, or are they cases of, whose cases are they? Sure, Your Honor, that's a fair question. If I may just have a moment to find the part in my brief where we talk about this. So, Your Honor, we discussed this starting at page 53 of our brief. And in that section, we cite a tax court opinion, we cite an opinion of this court and Dover Corp. and Subsidiaries v. Commissioner from 1998. We cite a Supreme Court case, Badaracco, which states that the code does not explicitly allow for the filing of an amended return and recognizes that the acceptance and processing of such a return is at the IRS's discretion. So I could go on, but that's a sampling of the cases that we cite there. So, Your Honor, if I may just have a moment to find the part in my brief where we talk about this case. Well, Your Honor, as discussed in some of these cases, if it were the case that a taxpayer could file a timely amended return, as the Cannery's did here, and tell the IRS that they owed $83,000 in income tax for 2011, and then come in well after the deadline, in some cases, you can file an amended return up to three years after it's due, and say, no, actually, we owe half the tax that we previously told you, and that the IRS was required to automatically accept that, that would throw the entire system into chaos. Well, not automatically accept that, but whether at that point the IRS has to go through the procedure of assessing in order to put in a lien. I mean, I don't mean that they have to automatically accept the amended return, but whether they should treat that as a situation in which a taxpayer had not admitted originally that he owed a certain amount. But I think it may be helpful, Your Honor, to think about the fact that in the Internal Revenue Code in Section 6201, Congress required the IRS to make assessments based on a taxpayer's return. And that the Internal Revenue Code, in fact, never mentions amended returns. So I think that gives a pretty clear indication of Congress's desire that the IRS immediately assess taxes that are reported on an original return. Now, the IRS, of course, has provided for amended returns as a matter of administration, but the Internal Revenue Code itself does not require or address the processing of amended returns. But I want to get ---- On another related point, are you familiar with the Second Circuit case of Irving v. Gray? It's a 1973 case. No, Your Honor. I apologize. I'm not. So that's a case where this Court held that the authority described in Section 6201A requires, and I'm quoting, requires no deficiency letter, and that subsection A1 extends the authority to the assessment of, and I'm quoting, all taxes determined by the taxpayer or by the secretary as to which returns are made. And this is a case which would be supportive of your general argument as to 6201A1. So I had been curious as to why it hadn't been cited in your brief, whether you had some disagreement with it or ---- No, Your Honor. Maybe what you could do is, after argument, look at that case. I will ---- The site is ---- Both sides can look at this case, of course. 479F2-20, 1973, an opinion by Judge Oaks with Judges Kaufman and Anderson on the panel. And perhaps you could send us a letter and you can both look at that case and let me know how it affects your argument. Sure, of course. I'd be happy to do that. After Thanksgiving. Thank you, Your Honor. That's very kind. We'll submit it next week if that is acceptable to the Court. I will note that the IRS does indeed have the authority, which I think is the passage they were reading from there, to assess all taxes on a return. I believe the question that Judge Calabresi was getting at is, once the IRS has done that, does the filing of an amended return require the IRS to change that assessment? And the answer pretty clearly is no, based on a litany of cases that we cite in our brief. But I'd like to return, if I may, and this is an important point, since we're spending all of this time talking about an amended return. Dover Corp. is one of them, Your Honor. And also this Court's decision in the Deutsch case is another case that talks about the purpose of an amended return and how the IRS deals with it. But especially because we're spending all of this time talking about amended returns, I want to remind the Court that in this CDP proceeding that's on review here, that the Kanrys raised one issue, which is that they didn't receive notices of deficiency. Now, with respect to any of the remaining assessments, they were not ---- I'm getting at with my question, but that seems not the issue that Mr. Kanry, at least, presents to us here on appeal. Yes, Your Honor, I think that's correct, and I couldn't say why. It could be maybe because they have conceded that at least for 2012 to 2014, and really any time there's a self-assessment, that it's not a deficiency. And here, all of the remaining assessments are not deficiencies. No notice of deficiency was required to be issued for any of the assessments on the books here. They are either self-assessed income tax, which, as we've been discussing, is not a deficiency. There are penalties for failing to timely pay and failing to pay estimated tax for those tax liabilities that they themselves reported, and it's interest. And none of those items are deficiencies for which a notice of deficiency would be required. As we've acknowledged, there's one deficiency at issue in this entire tax history, which was $4,873 that the IRS did not issue a notice of deficiency for, recognized that error, and then abated that tax. The tax court made clear in its decision that the lien was not sustained with respect to that small portion of the liabilities at issue, and that was a correct way to resolve it. There are no further questions from the court. We ask you to affirm. Thank you. Thank you. The IRS did — microphone, please. I'm sorry. The IRS did admit, certainly, that it had erred in not issuing a notice of deficiency. The importance of that is, in the absence of a notice of deficiency, and then their statute of limitations expired for any further assessment on the amended return. The importance of that is simply that by not issuing a notice of deficiency, the taxpayers were left with no remedies to go to tax court, because tax court, as Your Honors know, has limited jurisdiction, and in the absence of a notice of deficiency or notice of determination, you can't go there. So there was no way to challenge this self-employed small business determination that they weren't going to allow the casualty loss, which was a very real loss, as I said, in six figures. And that was not harmless error. If they had issued the notice of deficiency, we probably wouldn't be here in this context right now, but they didn't. Isn't the other procedure that you pay and then you go to district court?  Yeah. But I just wanted to, if I could, quote from one case where it was a U.S. district court that said, general principles of equity dictate that the IRS should not be allowed to issue instructions for completing its forms and later disavow those instructions. And that was Wilkies v. U.S., 50 F. sub second, 1281. It was a district court case in Florida, 1999. Commentators have said similar things, but the commentators, of course, are not law. The other thing I would just like to mention, if I might, is, if we can just read this very briefly. This is at page A162, the appendix 162, what's called an IRS disaster resource guide. A federally, well, let me see where it is here. If you have already filed your return for the preceding year, it says, in terms of federally declared disaster, which this was, this wasn't just a plain old vanilla, ordinary disaster, you know, a car hit a tree or something, this was a federally declared disaster. The IRS coded us as a federally declared disaster victim. That means something. Yes. If you have already filed your return for the preceding year, you may claim the loss by filing an amended form, Form 1040X. Now, that's not in any regulation, I suppose. But what does that mean? That's to be ignored totally? I don't think so, and I think the Court has the authority, and that case I cited is an example of that. Taxpayers have a right to rely upon what the IRS promulgates to them, presumably by the same authors. Thank you. Okay.